Fremont-Smith, J.
In this action, which was tried jury-waived on May 5-6, 1997, plaintiffs Patriot Portfolio, LLC, et al. (“Patriot”) seek to recover against the defendants David Rosenberg and Yadavendra Sharma for the balance due on their promissory note.[1] Liability *18 for the note is contested by Sharma on the grounds that the holder of the promissory note, Patriot, failed to comply with the requirements of G.L.c. 244, §17B, which provides:
No action for a deficiency shall be brought ... by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale . . . unless a notice in writing of the mortgagee’s intention to foreclose the mortgage has been mailed, postage prepaid, by registered mail with return receipt requested, to the defendant sought to be charged with the deficiency at his last address then known to the mortgagee, together with a warning of liability for the deficiency, in substantially the form below, not less than twenty-one days before the date of the sale under the power in the mortgage, and an affidavit has been signed and sworn to, within thirty days after the foreclosure sale, of the mailing of such notice. A notice mailed as aforesaid shall be a sufficient notice, and such an affidavit made within the time specified shall be prima facie evidence in such action of the mailing of such notice . . .
Based upon all of the credible evidence, the Court finds and rules as follows:
On February 18, 1988, Sharma and Rosenberg[2] executed and delivered a promissory note in the amount of $255,000 for the purchase of a two-family house known as 32 Depot Street, Belchertown. Thereafter, Heritage Bank for Savings acquired the note and mortgage, following which Sharma went into default on the note for nonpayment. After Heritage initiated foreclosure proceedings, the FDIC, as liquidating agent for Heritage, acquired the note and mortgage and scheduled a foreclosure sale for December 16, 1993. In addition to complying with G.L.c. 244, §14 by publishing promotional advertisements for the foreclosure sale in various newspapers and mailing notice to the owners, FDIC also mailed written notice, certified mail return receipt requested, to Sharma, on November 23, 1993, notifying him that the foreclosure sale would be conducted on December 16, 1993, and that he would be liable for any deficiency. The property was auctioned on that date for $57,101, the balance of which (after payment of the auctioneer and other expenses) was credited to Sharma’s indebtedness. Since the foreclosure date, Sharma has failed to make any further payments and, on October 31, 1994, Patriot acquired the note and mortgage from the FDIC. As of May 5, 1997, the principal due under the note was $249,448.07, interest due under the note was $143,473.08, late charges were $4,278.03 and cost of collection, including attorney fees and expenses, were $17,301.25, for a total amount due from Sharma to Patriot in the sum of $414,500.43.
The evidence at the trial was undisputed that, on November 23, 1993, FDIC mailed written notice to Sharma as required under G.L.c. 244, §17B, with the required warning of his liability for any deficiency, over twenty-one days prior to the date of sale, and that its agent signed and swore an affidavit to that effect, as required by G.L.c. 244, §17B, within thirty days after the foreclosure sale. The evidence at trial established that said November 23, 1993 letter was never actually received by Sharma, but, after attempts by the post office to make delivery at his address on three separate days in November and December, 1993, it was returned to the FDIC as an unclaimed letter. The issue presented to the Court is whether or not, under all the circumstances, Chapter 244, §17B required that Sharma actually have received the notice, for him to remain liable for the deficiency after the foreclosure, and, if so, whether he should be deemed to have received it, for purposes of G.L.c. 244, §17B, on the facts presented.
It would seem that, according to the plain language of G.L.c. 244, §17B, no proof of actual receipt of the notice is necessary. The statute not only provides for only the mailing of a notice, postage prepaid, by registered mail with return receipt requested, at the obligor’s “last address then known to the mortgagee,” but expressly provides that “a notice mailed as aforesaid shall be sufficient notice.” The Appeals Court, moreover, has interpreted an analogous statute, G.L.c. 244, §14, to be “satisfied by mailing” and indicated that “nonreceipt is irrelevant.” Hull v. Attleboro Savings Bank, 33 Mass.App.Ct. 18, 25 (1992).
Accordingly, the Court is not convinced that the Appeals Court’s earlier decision in Mutual Bank for Savings v. Silverman, 13 Mass.App.Ct. 1059, 1061 (1982), is still controlling.[3]
The Court finds, moreover, that in any event, there was no reasonable excuse for Sharma’s failure to receive the notice. He was not away in India for his father’s or mother’s funeral on November 24, November 29 and December 9, 1993, when the Post Office attempted delivery of the notice at his home, or during the subsequent twenty-one days during which the Post Office retained the notice so he could pick it up there. Rather, the Court finds that, without any reasonable excuse, Sharma simply refused and neglected to accept delivery of the notice.[4] Accordingly, even if Mutual Bank for Savings is still a viable case, Sharma cannot avoid liability for the foreclosure deficiency where, as here, his failure to receive actual notice of the contents of the letter was due to his own deliberate refusal to do so.[5] He is, accordingly, liable for the total amount of the deficiency in the sum of $414,500.43, which includes interest, attorneys fees and costs through May 5, 1997.
The Counterclaim
Sharma asserts that, by bringing the counterclaim in Suffolk instead of Hampden County, plaintiffs sought to cause him inconvenience and expense, so as to violate G.L.c. 93A, citing Schuback v. Household Finance Corp., 375 Mass. 133 (1978) (holding that a *19 creditor who systematically filed collection actions in locations inconvenient to the debtors could be liable where it was done “for the purpose of precipitating default judgments, making defense of the actions more difficult, and securing judgments more favorable” to the creditor). Here, however, the Court finds that this suit was filed in Suffolk County not for any such nefarious purpose, but (1) because of plaintiffs’ good faith belief, derived from Sharma’s own financial disclosure form which he had provided to the bank, that he had funds deposited at Fleet Bank (whose principal office is in Boston), and (2) on advice of plaintiffs’ counsel that, in order to effectuate trustee process against his bank account at Fleet, the proper venue was the location of the bank’s principal office, i.e., Suffolk. Nor did plaintiff demonstrate any damages from the suit having been filed in Boston in any event, as no motion to change venue pursuant to G.L.c. 246, §3 was ever filed by defendant, even though this might have been done at any time after Sharma’s motion to dismiss (for unproper venue) was denied by the Court in 1995.
ORDER
Accordingly, it is ORDERED that judgment shall enter for the plaintiffs against the defendants Yadavendra Sharma and David Rosenberg, jointly and severally, in the sum of $414,500.43, which includes interest and costs to May 5, 1997. Judgment shall enter in favor of the plaintiffs on the defendants’ counterclaim, which is hereby dismissed.

 The defendant Rosenberg has previously been defaulted.

 As only Sharma is contesting this action, further references shall be only to Sharma.

 There, the Appeals Court, in a rescript opinion, reversed the allowance of summary judgment for a Bank because there was an issue of material fact as to whether the plaintiff had actually received a notice mailed pursuant to c. 244, §17B.

 At the close of Sharma’s first day of testimony, in which he had suggested that his passport would substantiate his absence from the United States for his father’s funeral on the relevant days, the Court recessed the hearing until the next day, to permit him to retrieve his passport, which was at home. When the hearing resumed the next day, however, he did not produce his passport but claimed to have destroyed it and asserted, on being shown that he had admitted at his deposition that his father had died in 1992, that it was his mother’s funeral he was attending in India on the days in question. Because of these and other blatant inconsistencies in his testimony, the Court is unable to credit Sharma’s testimony.

 The Court finds, moreover, that he was actually aware at that time, of the Bank’s imminent plans for a foreclosure sale but, by his own admission, chose to bury his head in the sand by throwing away all other communications that he received from the FBIC.